[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter first came to the court by summons and complaint dated May 25, 1999 and returnable June 15, 1999 in which complaint the plaintiff husband sought a dissolution of the marriage and such other relief as the court deemed fair and equitable.
The usual order accompanied the complaint.
The defendant appeared on June 1, 1999 and filed an answer and a cross complaint on Jane 7, 1999 in which cross complaint the defendant sought a dissolution of the marriage, a restraining order against the plaintiff, a fair and equitable property settlement and such other relief as the court deems to be fair and equitable.
A motion for a restraining order dated May 26, 1999 accompanied the complaint. In addition, a restraining order was filed by the defendant wife.
The plaintiff on June 4th filed a motion for return of personal property which was the subject of an agreement dated August 9, 1999 accepted and approved by the Court, Solomon, J. CT Page 15499
An amended complaint was filed by the plaintiff on June 4, 1999 which correctly reflected the spelling of the last name of the parties.
On June 9, 1999 the plaintiff filed a motion for contempt as concerns certain life insurance.
On July 23, 1999 a motion to enjoin was filed by the plaintiff as concerns the 1998 income tax refund check.
This was the subject of an agreement dated August 9, 1999 accepted and approved by the Court, Solomon, J.
An application for a restraining order-relief from abuse dated August 10, 1999 was filed providing for a no contact provision as concerns the parties and the plaintiff husband was directed to obtain his personal affects and belongings via a police escort during the daytime.
A motion for contempt of automatic orders dated August 31, 1999 was filed on September 2, 1999 by the defendant as concerns the claim or allegation of the plaintiffs failure to make certain payments on an insurance policy. The matter was reserved to time of trial. In addition, a further motion for contempt was dated August 31, 1999 and filed September 2, 1999 as concerns a claimed violation of the court order of August 9, 1999 with regard to the orderly removal of certain goods, effects and personalty from the former marital home by the plaintiff. That also was reserved to time of trial.
On November 3, 1999 the defendant filed a motion to amend the claim for relief asking now in addition to previous requests for alimony, lump-sum or periodic, and to an allowance to defend.
The plaintiff and the defendant with their respective attorneys and their witnesses appeared before the court on November 12, 1999 and November 16, 1999 and the matter was heard to a conclusion.
The Court makes the following findings of fact.
The plaintiff and the defendant were united in marriage on September 13, 1997 in the town of Occum.
The defendant's name at the time of the marriage was CT Page 15500 Hindsley.
Both parties had resided in the State of Connecticut for more than one year prior to the bringing of the petition.
The marriage of the parties has irretrievably broken down with no reasonable prospect for reconciliation.
There are no minor children issue of this marital union.
No minor children have been born to the defendant wife since the date of the marriage.
Neither party has been the recipient of welfare assistance, either from the State of Connecticut or any town, municipality or subdivision thereof.
The plaintiff is age 52. The defendant is age 50.
The plaintiff enjoys good health except for occasional headaches. He was recently hospitalized for a condition of kidney stones.
The plaintiffs education extended through the freshman year of high school only.
The plaintiff has a hearing problem in the right ear.
The defendant is a registered nurse and was a registered nurse at the time that the parties first met.
The plaintiff has been a truck driver and equipment operator during most of his employed years.
The plaintiff was employed at an establishment known as Ed's Garage for 19 years as a truck driver and mechanic.
The plaintiff left that position due to problems with his employer and the employer's son.
The plaintiff at the present is employed by Mr. William B. Coon of the Town of Preston where he runs various types of equipment and drives a truck. This employment is relatively recent and the plaintiff has received only seven wage payments so far. CT Page 15501
The plaintiff is still covered for medical matters under his prior employment at Ed's Garage. The cost to him is $253.00 a month.
The plaintiff expects to have medical coverage shortly incident to his new employment.
The plaintiff owns a certain lot of land in the town of Hampton comprising 1.99 acres. This is the remaining portion of land that had a home thereon which the plaintiff acquired from his father years ago.
The 1.99 acres, it is represented, is free and clear. The plaintiff pays the taxes thereon.
The plaintiff has a money market account as reflected on his financial affidavit in the approximate amount of $56,000.00. These funds resulting from the sale of his former home in Hampton.
The $56,000.00 CD was formally in the joint names of the plaintiff and the defendant, but now stands in the name of the plaintiff alone.
The Hampton property was sold on October 1, 1998.
This is an admittedly brief marriage the same being for a period of approximately 20 months from date of marriage to the initiation of the complaint for divorce.
During this period of time the parties lived in the marital residence owned by the defendant.
During this time frame, as indicated, the plaintiff has regularly paid the defendant $200.00 a week toward household expenses during a period of time that the parties were together in the marriage and before the plaintiff vacated and acquired other quarters.
During the course of the marriage, the plaintiff made some plumbing repairs to the defendant's home which the plaintiff valued at $400.00.
In addition, the plaintiff in his testimony claimed a credit CT Page 15502 of $1,500.00 for a septic system put in at the defendant's home prior to the marriage. The installation was done by William E. Coon and Company.
The plaintiff owns a number of motor vehicles, a Ford Model 150 pickup vehicle, a dump truck purchased in January of 1997, a Ford Bronco purchased in 1994. All of the vehicles are in the plaintiffs name alone.
The plaintiff has certain vested pension rights incident to his long-term employment at Ed's Garage.
One of the assets of the parties is a federal income tax refund check concerning the tax year 1997 in the amount of $4,500.00.
After the plaintiff had vacated the marital premises because of an outstanding restraining order an agreement was reached with regard to an opportunity for the plaintiff to go to the subject premises on a day certain with help and assistance for the purpose of removing his goods, personalty items and tools.
The plaintiff testified that he called the State Police Troop in Montville prior to attending at the subject premises on the agreed date so as to have an officer there to make sure that no problems or difficulties occurred.
The plaintiff when he arrived at the agreed date had a number of friends or acquaintances with him and several vehicles, mindful of the volume of items that were to be removed. The agreement and outstanding order allowed for two people to go onto the subject premises to accomplish the requisite removal. One or more troopers were on the premises to see that no problems occurred.
The plaintiff testified that the defendant on the date of the anticipated removal spoke to him in derogatory or vulgar terms but this issue was disputed by the defendant.
On arriving at the subject premises the defendant apparently found some of his items on the property outside under a blue tarp and claimed that some of the items had been damaged as a result of being exposed to the weather.
There were apparently frequent arguments or disruptive CT Page 15503 conduct between the parties, some of which involved problems pertaining to the plaintiffs children issue of a prior marital union.
The plaintiff also claimed that the defendant took the position that he, the plaintiff, never did anything right. There were some altercations that appeared to get out of control.
The defendant as a registered nurse worked the second shift and would return at about midnight. mindful of the nature of her employment.
The plaintiff claimed that the defendant upon her return late in the evening would disturb him in his sleep and made threats with regard to spending the funds represented by the certificate of deposit.
In May of 1999 the plaintiff changed the status of the certificate of deposit referenced above so that it then stood in his name alone with the defendant being designated as "beneficiary".
The plaintiff testified that when he told the defendant he was leaving that the defendant, in his words, "snapped".
The plaintiff claimed that the defendant tore up pictures of his grandchildren and created other problems incident to items of his personalty including animal trophies.
On May 16, 1999 there was an altercation between the plaintiff and the defendant with regard to the plaintiffs anticipated removal of some of his items of personalty which resulted in loud talk, harsh words and a claim by the defendant of restraining conduct by the plaintiff on her and injuries sustained as a result of his conduct on that day which caused her to go to the emergency room for problems involving shoulder pain.
The plaintiff, although no court record incident thereto was presented to the court, was arrested, allegedly charged with disorderly conduct and that charge is still pending and has not been resolved as of the date of these proceedings incident to the dissolution.
Problems in the union developed even during the honeymoon. CT Page 15504
Prior to the restraining order the plaintiff had returned to the premises several times to try to regain certain items of his personalty including clothing.
The plaintiff testified that every time mention was made of his children between the parties that there were difficulties or an altercation.
The defendant at one point in time during the marriage made a present to the plaintiff of a dog. The dog was named Rockefeller. That purchase was made some time ago. The dog was originally registered in the plaintiffs name. The dog according to the testimony is now, and for some time has been, with the defendant.
During the marital union and prior to the separation, the parties by alleged mutual agreement took out insurance policies on the lives of each with the opposite spouse being the beneficiary.
The defendant paid the premiums incident thereto. The payments being made and taken from her employment earnings.
The costs for these insurance premiums amounted to $33.00 a week, which as indicated, were deducted from the defendant's regular pay and compensation.
The plaintiff represents that there was never an agreement for him to be responsible for the insurance and in any event the policy or policies have lapsed and are no longer of any full force and effect.
The plaintiff presently resides in Jewett City in a two-story home.
The plaintiff is desirous of having the court award the dog Rockefeller to him claiming that he has trained the dog. It is represented that the dog is five years old. It is a Rottweiler. The plaintiff acknowledged that on occasion he spoke in loud terms to the dog and was very strict with the dog. A prior court order allowed the defendant wife to keep the dog during the pendency of the proceedings.
The plaintiff testified that his earnings in 1998 were $44,000.00.± CT Page 15505
The plaintiff testified that during the marriage he purchased a $3,000.00 necklace for the defendant, that he. bought a camcorder for the defendant's children, that he paid joint household bills, that a Hawaiian trip was planned incident to which certain payments were made. The trip was never accomplished and apparently the deposit monies were forfeited.
The plaintiff testified that during the course of the marriage he offered the defendant a greater contribution for his share of household expenses and matters of like nature but in excess of the $200.00 weekly but that the defendant declined to accept further sums.
The plaintiff and the defendant resorted at one point in time to marriage counseling. The parties attended together on two occasions. The plaintiff declined or refused when the third scheduled counseling visit arrived.
The plaintiff testified that he helped his son issue of a prior marriage as concerns certain problems that beset the young man to the extent of $12,000.00.
The sale by the plaintiff of his property in Hampton was with the idea and thought that after the sale of the Hampton property that the home of the defendant would be sold and that the parties would then embark on a joint venture for building or buying a new home. This of course never came about because of difficulties in the marital union.
From the testimony of the witness Diane May Coon of Preston, the Court finds that the witness is an acquaintance of the plaintiff, that the witness and her husband William E. Coon employ the plaintiff, that she has known the plaintiff for 40 years, that he worked for the Coon business as a truck driver and equipment operator at a rate of $15.00 an hour.
The Coon business is involved in septic installations and leaching fields.
The witness verified that a payment of $1,500.00 was made when a leaching field was put in at the marital residence which is owned by the defendant.
The plaintiff and the defendant and the witness have visited each other. The witness' husband, William E. Coon, works seven CT Page 15506 days a week. It was represented that no cash payments were made to the plaintiff by either the witness or William E. Coon, but on occasion they did allow the plaintiff to borrow equipment for jobs in which he might be involved.
From the testimony of the witness William E. Coon of Preston, the Court finds that he is employer of the plaintiff and has been since October of 1999. That the plaintiff was never prior to that date employed by the witness, that no cash payments were made to the plaintiff by the witness. The witness William E. Coon verified that on occasion he did loan the plaintiff his backhoe for work that the plaintiff apparently did on his own.
The witness William E. Coon has known the plaintiff all of his life and verified the installation of the septic system and leach field at the defendant's residence.
From the testimony of State Trooper Michael J. Brown, the Court finds that he answered a call requiring his presence on the marital premises owned by the defendant on May 16, 1999. He proceeded to the premises. He observed a verbal argument on the front lawn.
The defendant claimed at that time that the plaintiff had pushed her down some stairs. This was refuted by the plaintiff, but in any event, the conduct resulted in the plaintiff being arrested for disorderly conduct, which as earlier noted, is still pending.
Trooper Brown testified that the defendant claimed that her shoulder was sore as a result of the plaintiffs conduct on that date, and that her face was red.
The defendant declined any medical attention at the scene. The trooper observed the plaintiff in the driveway packing and picking up his goods and personalty.
From the testimony of the witness Laurie Becotte, the Court finds that the witness accompanied the plaintiff in August of 1999 on the occasion of his going to the premises pursuant to the agreement reached for the retrieval of his goods and personalty. The witness Becotte testified that she stood on the curb of the highway, did not go on the premises themselves. The witness testified that the defendant spoke to her in a derogatory fashion and made vulgar comments. The witness represented that the CT Page 15507 defendant's daughter engaged in similar conduct.
The witness Becotte inventoried the items of personalty as they were brought off the premises and put into waiting vehicles.
The witness testified that she did not engage in any conduct which would have provoked comments by the defendant or her daughter and that in addition, the witness Becotte was addressed in derogatory terms at the time of the court hearing outside of the actual proceedings.
The witness testified that there was some yelling and confusion at the time of the August removal of the goods.
From the testimony of Donald G. Becotte, the Court finds that the witness accompanied the plaintiff to assist in picking up his goods and personalties at the residence of the defendant. He did in fact go on the premises and helped in the removal of the goods. The witness saw the defendant there. The defendant according to his testimony followed the witness around and engaged in vulgar language and/or oaths.
The witness testified that because of delays with regard to the arrival of the State Police that instead of the two hours for the removal of the goods provided for under the agreement that the time that they actually had was 45 minutes.
According to the witness Donald Becotte, five or six vehicles were at the premises that were filled with goods to be removed.
From the testimony of the witness Gail K. Cadieux, the Court finds that she accompanied the plaintiff to help retrieve and remove his personalty in August of 1999. The witness observed the defendant on the premises and the witness testified that she was greeted by the defendant and the defendant's daughter in vulgar terms.
The witness testified in addition thereto that she was the subject of derogatory comments at the time of the court hearing outside the presence of the Court.
The witness Cadieux videotaped the proceedings that occurred on the August 1999 removal date in the hope and with the thought that it would have a tempering influence with regard to those who were in attendance on that date. CT Page 15508
From the testimony of the defendant Mary Vargas, the Court finds that the witness verified the date of marriage, September 13, 1997, that she is 51 years old, that her education extended initially through high school and at age 40 she became a registered nurse at the Backus Hospital. The witness indicated that her health was excellent except for problems on occasion with her right shoulder as a result of a work injury. She had surgery on the shoulder at some time in the past; to wit, January of 1998.
On May 16, 1999 she had occasion to visit the emergency room at Backus Hospital with regard to experiencing shoulder pain. The witness was treated with physical therapy.
The witness' visit to the hospital on May 16th arose out of activity which was initiated on May 15th when she came home at the end of her shift at midnight. A discussion ensued with the plaintiff about his moving out. The defendant claimed that the plaintiff, incident to that conversation, spoke about shooting the dog Rockefeller, and burning down a shed that was on the premises. The witness at that time removed a deer head from the wall. The witness testified that the plaintiff pulled her hair and knocked her to the floor, shoved her onto a couch. In addition, the defendant claimed that the plaintiff shoved her over a dog pen, presumably in the residence, and said to the defendant that "she belonged in a hole".
The defendant also claimed that the plaintiff held her face on a counter in the home and squeezed her. The defendant dialed 911. The defendant represents that the plaintiff ripped the phone from the wall and that her glasses were knocked off.
The defendant indicated that the plaintiff would not permit her to go down the stairs from the upper level to the lower level in the residence.
In due course, the defendant's daughter and son-in-law arrived at the premises in addition to the police visiting the premises, the defendant indicated that she was shaken up. The plaintiff left the residence on the date of this occurrence at 5:30 a.m. to go to his workplace for Mr. Coon.
The defendant has known the plaintiff for seven years. CT Page 15509
The defendant represents that the plaintiff has worked for Coon doing odd jobs for as long as 27 years and the defendant claimed that Coon paid the plaintiff in cash but the evidence does not seem to support that claim.
On the occasion of the May 15-16 events, the authorities took the defendant's statement and thereafter, as indicated above, the defendant went to Backus Hospital where her shoulder was x-rayed.
The defendant claims that there were three other instances of physical violence during the course of the marital union. The first occurring on the honeymoon of the parties where the defendant claimed that the plaintiff shoved her then checked out of the establishment at which they were staying, leaving her.
On another occasion the defendant claimed that the plaintiff grabbed her by her upper arms and pushed her. The defendant characterized the plaintiffs conduct as being frequently angry and that there were many silent dinners.
The defendant verified that there were problems in the marital union arising out of matters relating to the plaintiffs adult children.
Initially the plaintiff had moved into the defendant's home on June 12, 1997. At one point in time after the plaintiff moved in with the defendant, the plaintiffs adult son occupied his residence in Hampton and it is represented damaged the same and that summary process had to be resorted to get the plaintiffs adult son out of the premises and thereafter the premises were rehabilitated.
The defendant resides in her home, which was purchased in 1992.
As earlier noted, the plaintiff owns at this time a parcel of land constituting 1.99 acres, valued at $22,000.00. The remaining portion of land reserved at the time of the sale of the property in Hampton.
The defendant verified that originally the arrangement between the parties was to the effect that the plaintiff would give the defendant $200.00 weekly for household expenses.
The defendant testified that the writing out of the checks CT Page 15510 and the payment of all bills was done by her.
The issue as to life insurance was initiated by the parties trying to think ahead, mindful of the fact, as the defendant termed it, they were getting older and they had anticipated building a new home and that the life insurance would be a resource which could be resorted to in the event that anything happen to one or the other. The proceeds being presumably available for the purpose of paying off and discharging any mortgage on a new residence.
The defendant with the plaintiff attended marriage counseling on three occasions. The first was in March of 1999, the second in April of 1999, the third in May of 1999.
The defendant testified that the counseling did not help to solve the problems of the parties and that she paid for the counseling services. In addition, the defendant represented that she paid a legal bill for the plaintiffs adult son, presumably as concerns some difficulty which he had gotten in to.
When the plaintiff vacated the marital premises, he took the freezer and the contents thereof with him. The defendant indicated that during the course of the union that she secured and paid for the animal food and veterinary bills.
The regular custom of the defendant was to deposit her check in the bank and then draw checks against it.
The defendant's claim is to the effect that she has for all practical purposes raised the dog and trained him and enjoys a good and happy relationship with the dog Rockefeller. It is the defendant's position that the plaintiff has not treated the dog kindly and that if the plaintiff and the dog are together that the dog tries to run away from the plaintiff.
The defendant acknowledged that the dog Rockefeller, a Rottweiler, is not good insofar as children are concerned, and that she would have serious reservations as concerns the dog being with the plaintiff at the residence of the plaintiffs brother where apparently scrap metal abounds, there is a five-year old child and strangers come regularly to those premises.
The defendant has indicated that the plaintiff would give the CT Page 15511 dog away or shoot the dog in the event that problems arose as concerns keeping the dog.
The defendant initially paid $600.00 for the dog Rockefeller as a present and gift to the plaintiff.
The defendant's claim is to the effect that when the plaintiff came to remove goods and personalty that he had not taken when he originally left the property and that as many as ten people accompanied him with various vehicles wherein the court order provided for two parties to assist in that regard.
It is the defendant's contention that she has returned all of the plaintiffs goods, wares and possessions.
The defendant acknowledged that she gave certain types of canned goods to a local charity.
The defendant used $1,500.00 of joint assets plus the further sum of $500.00 which had been set aside for a contemplated trip to Hawaii for the purpose of paying a dental bill and other obligations.
The defendant is desirous of having the court grant her the restoration of her maiden name.
The defendant feels that the court should award possession of the Rottweiler dog Rockefeller to her on the basis of the overall circumstances.
The defendant's request of the court as concerns the issue of alimony was to the effect of asking for $1.00 a year, which would be a protection to her in the event that problems arose in the future as concerns her claims as to injuries to her shoulder allegedly caused by the conduct of the plaintiff.
The defendant claims that during the life of the admittedly brief marriage that she expended $29,000.00 for various and sundry matters for necessities, food and matters of like nature and that this sum represents only one-half of what was actually spent.
The defendant testified that she was willing to give the plaintiff a credit against this $29,000.00 to the amount of $17,000.00, which would reduce her claim in that respect to CT Page 15512 $12,000.00. In addition, the defendant asks the court for the $4,500.00 income tax refund, asks for an allowance to defend and the continuation of a restraining order and the dissolution of the marriage.
The defendant represents that her equity in her home at 19 Wendy Drive is to the amount of $32,000.00. This property is in her name alone. In addition, the defendant testified that the timeshare referred to on her financial affidavit was acquired and purchased by her ten years ago for and in consideration of the sum of $3,200.00. That asset is in her name alone.
From the testimony of Elizabeth Andruskiewicz of Uncasville, the Court makes the following findings.
Elizabeth Andruskiewicz is the defendant's daughter. This witness has known the plaintiff for seven years.
She assisted in the preparation of the goods and wares of the plaintiff for their delivery over to him pursuant to the agreed court order.
This witness assisted in moving a picnic table out in the front of the defendant's residence to assist in laying out the goods, assisted in placing a blue tarp over goods that were placed outside. This witness visits the defendant's home regularly, almost every day.
This witness testified that she saw bruises on her mother, the defendant, and in the May 15-16 incident, and insofar as the August date is concerned when the goods were to be removed pursuant to court order, stated that she conducted herself in a quiet and proper manner and was not profane.
This witness assisted in moving the goods and wares of the plaintiff. This witness saw a scratch on the defendant's lip and bruises on the defendant's chest at the time that the defendant was required to go to the Backus Hospital for x-rays or evaluation. The witness on that occasion took her mother home from the hospital.
The witness testified that she and her family endeavored to have a reasonably good and tolerable relationship with the plaintiff, but to no avail. CT Page 15513
This witness testified as to seeing the plaintiff strike the dog Rockefeller and speak to the animal in loud terms.
From the exhibits, the Court makes the following findings.
Plaintiff's Exhibit A is comprised of six pay envelopes showing the amount earned by the plaintiff from his employer, the Coon Company. The gross amounts reflected on the exhibits are as follows for various weeks, the dates do not appear on the exhibit. The gross weekly amounts for 40 hours are $600.00, one for 38 hours at $570.00, but the majority are for the 40 hours.
Various net amounts from this exhibit are as follows for the plaintiff's compensation, $428.57, $472.47, $444.49, $596.83, $604.80 includes overtime and on the previous reference as well, $622.44 including overtime.
From Plaintiff's Exhibit C the Court finds that the dog Rockefeller is registered with the American Kennel Club, and the owner indicated to be the plaintiff petitioner.
Plaintiff's Exhibit B consists of torn portions of a photograph showing the dog Rockefeller which photograph was torn into different pieces by the witness Elizabeth Andruskiewicz, daughter of the defendant.
Plaintiff's Exhibit E, a letter from Messrs. Hughes and Hughes to Attorney Traystman having to do with the life insurance policy on Wayne Vargas and indicating the amount required to reinstate the policy.
Plaintiff's Exhibit D, notice to the plaintiff from the insurance agent indicating that the policy on his life has expired without value.
Defendant's Exhibit 3 is the State of Connecticut State Police report by Trooper Brown as concerns the events that transpired at the 19 Wendy Drive in Baltic on May 16, 1999 indicating the plaintiff being charged with the offense of disorderly conduct as a result of activities on the subject premises on that date.
Defendant's Exhibit 2 is a receipted statement as concerns the work done by William Coon and Son, Inc. on the Wendy Drive premises septic system for $1,500.00. CT Page 15514
Defendant's Exhibit 1 is merely a verification of hours worked and compensation received from the Coon organization relative to compensation paid to the plaintiff.
Defendant's Exhibit 5 is an appraisal report as concerns the property at 19 Wendy Drive valuing the property at $110,000.00 as fair market value.
Defendant's Exhibit 6 is an appraisal report with regard to the 1.99 acres, a lot in the Town of Hampton valued at $22,000.00.
Defendant's Exhibit G is a handwritten agreement dated August 9, 1999 between the parties providing for terms and conditions with regard to the contemplated removal of the plaintiffs goods and effects which was initially scheduled for August 29, 1999 limited to the plaintiff and two assistants.
Defendant's Exhibit 8 is the loan settlement statement showing and verifying the sale by the plaintiff of the Hampton property for $112,000.00, the equity remaining after the payment of various and sundry obligations including the payoff of two mortgages being to the amount of $56,870.51.
Defendant's Exhibit 9, the 1998 1040 federal income tax return for the plaintiff and the defendant showing total wages for both parties $96,518.00 and reflecting a refund due of $4,563.00.
Defendant Exhibit 10 is the 1998 State of Connecticut return which tracks the federal return showing the same combined total gross income and providing for a refund from the State of Connecticut for $226.00.
Defendant's Exhibit 11, a letter from Liberty Bank dated November 8, 1999 directed to the defendant from the bank verifying that as of May 15, 1999 a joint certificate with said bank was closed in the amount of $56,425.50 by the plaintiff. See also Defendant's Exhibit 12.
Defendant's Exhibit 4 is a statement from Ed's Garage, Inc., where the plaintiff was employed for over 19 years, verifying the amounts of his compensation during the majority of those years including insurance coverage that existed while the plaintiff was CT Page 15515 an employee of that business entity.
Defendant's Exhibit 7 is the medical record from Backus Hospital as concerns the defendant's admission on May 16, 1999. This exhibit reflects that the defendant's chief complaint was that she was assaulted by her spouse on the day in. question, sustained pain to her shoulder, lip pain, facial pain and swelling, that the defendant was grabbed around the neck and pushed into counters.
The medical evaluation apparently was that the defendant sustained a sprain. The medical report states under the discharge diagnosis, sprain of the right shoulder and multiple contusions and abrasions.
Defendant's Exhibit 14 is a voluminous statement as concerns apparently all of the disbursements and expenses during the life of the marriage for a wide variety of all sorts of items necessary to the conduct of any household.
Defendant's Exhibit 13 is a statement entitled "Expenses Paid for the Plaintiff by the Defendant", wherein the defendant makes the total bottom line claim in the amount of $1,303.05 plus an additional $456.30 for expenses attributable to the dog Rockefeller.
Defendant's Exhibit 15, a collection of colored photographs showing the goods and wares of the plaintiff as they were placed outside the marital home, the manner of their disposition and the manner in which they were covered to protect them from the ravages of the weather.
From the respective financial affidavits of the parties, the Court makes the following findings.
The plaintiffs weekly gross income from William Coon and Son is to the amount of $600.00, itemized deductions for taxes, $155.51, for a net of $444.49; overtime which has been fairly consistent amounting to $146.25 a week, deductions therefrom of $62.91, for a net of $83.34, for a combined total net weekly income of $527.83.
Weekly expenses are shown to be $485.20.
The plaintiff shows several relatively modest debts totaling CT Page 15516 $2,776.00 on which periodic payments are being made.
The plaintiff values the remaining land in Hampton, 1.99 acres, at $25,000.00 free and clear, a 1996 Ford F-150 valued at $17,000.00 with a loan balance of $3,832.00 for an equity of $13,168.00, a 1994 Ford Bronco valued at $17,000.00 free and clear, a 1986 Ford F-350 valued at $6,000.00 free and clear, checking, money market and savings account total $60,600.00, cash value of insurance through the plaintiffs former employer Ed's Garage valued at $5,469.00 vested, pension benefits of the plaintiff with his former employer Ed's Garage where he worked for 19 years valued at $22,164.00. The income tax refund check which is being held by counsel to the amount of $4,500.00.
From the defendant's financial affidavit, weekly gross income from her position as a registered nurse at William Backus Hospital, $1,199.11; various itemized deductions for taxes, life insurance, etc. $478.12 for a net of $720.99. The defendant indicates her weekly expenses amount to $659.38. The defendant has two debts totaling $5,373.19.
The defendant values her home at 19 Wendy Drive in Baltic at $110,000.00, mortgage, $78,000.00, equity $32,000.00. No value is shown on her financial affidavit for the Wellington-Newport timeshare.
The defendant has a 1994 Ford Tempo valued at $4,000.00 free and clear, a 1991 Chevrolet Corvette valued at $12,000.00 free and clear. Other vehicles shown on her financial affidavit are the property of her husband.
The defendant shows the $56,000.00± CD which at the present time is in the plaintiffs name, otherwise the defendant has $75.00 in bank accounts. The defendant has five shares of McDonald's stock, common, valued at $250.00.
To the defendant's financial affidavit is attached a statement from William Backus Hospital with regard to her pension benefits indicating that the defendant's estimated pension benefits upon reaching age 65 are estimated to be $499.12 per month.
There is no present cash value to her employment benefits until date of her retirement, age 65. CT Page 15517
 Discussion
This is a marriage of approximately 20 months.
The second marriage for the plaintiff husband and the third marriage for the defendant wife.
There are no children issue of this relationship.
There is a considerable disparity in the educational attainments of the parties. The plaintiff husband completing less than one year in high school. The defendant completing the requirements of at least three years at the college level to be a registered nurse.
The defendant's weekly income is considerably greater than that of the plaintiff but understandably so mindful of her position.
The marital union apparently was beset with problems from the very beginning mindful of a dispute that arose even during the honeymoon. In addition, apparently problems with adult children of the parties by virtue of former marital unions created stresses or problems which led to difficulties between the plaintiff and the defendant.
Both of the parties prior to the present marital union had homes and residences of their own. The plaintiff had a home and residence in Hampton which was subsequently sold. The $56,000.00 certificate of deposit representing the equity.
In the defendant's case, she has owned the 19 Wendy Drive property in Baltic for a considerable period of time prior to the marital union. The property stands in her name alone.
 The Law
The Court has considered all of the statutes which apply in matters of this nature including C.G.S. § 46b-82 regarding alimony.
The Court has considered all of the applicable case law that governs the matter.
The Court has considered the testimony of all witnesses, CT Page 15518 their candor or lack thereof and all exhibits and the arguments of counsel.
The Court has considered the length of the marriage, the problems with which it was beset, the age, health, station, occupation, employability, estate and the needs of the parties based on what is available to the Court.
The Court has considered the standard of living of the parties as best it can and the present financial situation that exists.
The Court enters the following orders.
The Court grants the defendant's request for the restoration of her maiden name so that henceforth she shall be known as Mary Gulya.
The Court grants ownership and possession of the Rottweiler dog known as Rockefeller to the defendant wife mindful of the testimony adduced during the two-day trial and the location of the home that the dog would have if awarded to the plaintiff.
The Court grants alimony to the defendant wife in the amount of $1.00 a year for a period of two years non-modifiable as to term to terminate earlier on the defendant's death, remarriage or cohabitation as provided for under the statute.
Although marriage is a two-way street with no exact guidelines as to financial sharing, it appears that the defendant has paid out during the life of this brief marriage considerably more in ongoing expenses than the plaintiff and to that extent the Court grants the defendant the sum of $10,000.00 from the plaintiff to more equitably balance the expenses made and incurred during the marriage.
The federal income tax refund in the amount of $4,500.00 to be apportioned one-half to each. The same to apply to the State income tax refund, one-half of the amount to each.
The defendant may retain her home and residence located at 19 Wendy Drive in Baltic. The plaintiff may retain the certificate of deposit, $56,000.00±, representing the proceeds from the sale of his Hampton property some time ago. The plaintiff may retain the remaining land comprising 1.99 acres in Hampton. CT Page 15519
The defendant may retain her 1994 Ford motor vehicle and the 1991 Chevrolet Corvette.
The defendant may retain the Wellington timeshare for which no values were provided to the Court.
The defendant may retain the few shares of McDonald's stock.
The defendant may retain her prospective pension benefits and rights incident to her employment at the Backus Hospital, and in addition, the modest amount shown on her financial affidavit for checking and savings in her name.
Each of the parties to be responsible for the debts shown on their financial affidavits.
The defendant shall return any remaining items that belong to the plaintiff that are still in her possession including his personal effects, any remaining clothing, personal papers, family photographs and matters of like nature or any items belonging or coming to the plaintiff from his children issue of former marital unions.
Each of the parties to be responsible for their own attorney's fees.
The Court acknowledges that affidavits of debt as to counsel fees were provided, but the Court enters no orders incident thereto.
As concerns the long list of items of personalty, many being matters of relatively insignificant consequence, the Court directs that if the parties cannot amicably resolve the disposition of those items, that the same be given over to arbitration and the same be binding thereon.
The restraining order which is currently in full force and effect may continue for the remaining time frame outstanding incident to that order.
Insofar as the two motions for contempt are concerned, with reference to the contempt motion having to do with payments on alleged agreed insurance policies, the Court finds that the plaintiff never committed himself to be responsible for the CT Page 15520 payments; to wit, $33.00 periodically; that the same were taken out of the earnings of the defendant and there does not appear to be any justification for contempt citation in that respect.
With regard to the contempt motion as concerns the activities on the premises of the defendant at the time of the removal of the plaintiffs goods and wares, it appears from the testimony that there were no more than two people actually on the premises, in addition to the plaintiff, which was provided for under the Court order. Admittedly there were other parties in attendance, but they did not apparently trespass on the premises and merely facilitated the orderly removal of the goods once they were carried off the premises of the defendant.
The plaintiff may retain possession of the Ford motor vehicles in his name and presently in his possession; to wit, a 1996 Ford, 1994 Ford and 1986 Ford.
The plaintiff may retain the Savings Institute account of $1,100.00 and the Eastern Savings Account of $3,500.00.
The plaintiff may retain the cash value of his life insurance and his pension benefits with American General valued at $22,164.00.
The Court grants the request for the dissolution of the marriage on the grounds of irretrievable breakdown and declares the parties to be single and unmarried pursuant to the provisions of the statute.
Austin, J.